UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ZIAIR DUNLAP,

Defendant.

25 Crim. 302 (LGS)

**OPINION & ORDER**

LORNA G. SCHOFIELD, District Judge, sitting by designation:

On July 24, 2025, Defendant Ziair Dunlap was indicted on three counts of distributing fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Following his indictment, Defendant sought to participate in Providing Alternatives That Help ("PATH"), a pretrial diversion program instituted by the U.S. Attorney's Office ("USAO") for the Northern District of New York ("NDNY"), but defense counsel learned on February 9, 2026, that Defendant's application had been denied. Defendant now moves to dismiss his indictment with prejudice based on the involvement of John A. Sarcone III in Defendant's prosecution. In the alternative, Defendant seeks (1) Mr. Sarcone's disqualification from any further participation in the case, (2) dismissal of the indictment without prejudice, (3) invalidation and independent review of the PATH denial and (4) if the indictment is not dismissed on the present record, discovery concerning Mr. Sarcone's involvement in the decisions to charge Defendant and deny his PATH application.

For the below reasons, Defendant's motion is denied insofar as it seeks (1) dismissal of the indictment or discovery concerning Mr. Sarcone's involvement in the decision to charge Defendant and (2) invalidation of the PATH determination or discovery concerning Mr. Sarcone's involvement in the determination. Decision is reserved on Defendant's request for

Mr. Sarcone's disqualification from future participation in the case pending the supplemental submission set forth below.

## I. BACKGROUND

### A. Mr. Sarcone's Appointment and the *Grand Jury Subpoenas* Proceedings

The last Senate-confirmed U.S. Attorney for the NDNY, Carla Freedman, resigned on February 17, 2025. Upon her resignation, First Assistant U.S. Attorney ("FAUSA") Daniel Hanlon began serving as Acting U.S. Attorney pursuant to the automatic succession provision of the Federal Vacancies Reform Act ("FVRA"), which provides that upon a vacancy in the office of U.S. Attorney, the "first assistant" to the office "shall perform the functions and duties of the office temporarily in an acting capacity." *See* 5 U.S.C. § 3345(a)(1).

Shortly thereafter, then-Attorney General Pamela Bondi appointed Mr. Sarcone as Interim U.S. Attorney for the NDNY pursuant to 28 U.S.C. § 546, the only statutory mechanism other than the FVRA for temporarily filling a vacancy in the office of U.S. Attorney. Mr. Sarcone began serving in that role on March 17, 2025. Under the statute, Mr. Sarcone's interim appointment would expire at the earlier of (1) 120 days or (2) the appointment of a U.S. Attorney under 28 U.S.C. § 541, which requires nomination by the President and confirmation by the Senate. *See* 28 U.S.C. § 546(c). The President never formally nominated Mr. Sarcone -- or anyone else -- as U.S. Attorney. Accordingly, the Senate did not confirm a nominee before Mr. Sarcone's interim appointment expired.

Under § 546, if no successor is in place when the Attorney General's 120-day appointment ends, the district court for the relevant district may appoint a U.S. Attorney to serve until the vacancy is filled by a Senate-confirmed appointee. *See id.* § 546(d). On July 14, 2025, shortly before the expiration of Mr. Sarcone's interim term, the Board of Judges for the NDNY

declined to exercise its authority under § 546(d) to appoint a U.S. Attorney. The same day, the Department of Justice ("DOJ") took a series of personnel actions. First, it reassigned Mr. Hanlon from FAUSA to Deputy U.S. Attorney, creating a vacancy in the FAUSA role. Second, it designated Mr. Sarcone as FAUSA for a period of one year. Third, it appointed Mr. Sarcone as a Special Attorney pursuant to 28 U.S.C. § 515 for an indefinite term. The Special Attorney appointment letter, which was from the Executive Office for United States Attorneys, stated that Mr. Sarcone was "authorized to conduct in the [NDNY], any kind of legal proceedings, civil or criminal, . . . which United States Attorneys are authorized to conduct." Also on July 14, 2025, Mr. Sarcone sent a letter to the Chief Judge of the NDNY stating that, based on these actions and by operation of the FVRA, he was "now serving as Acting United States Attorney for the [NDNY] indefinitely."

Mr. Sarcone's authority to serve as Acting U.S. Attorney was subsequently challenged in connection with two grand jury subpoenas issued to the Office of the New York State Attorney General ("NYOAG"). On August 5, 2025, Mr. Sarcone personally requested issuance of the subpoenas in connection with federal criminal investigations concerning two civil enforcement actions brought by NYOAG. Both subpoenas identified "Acting United States Attorney" Sarcone as the federal prosecutor requesting the subpoena and did not name any other prosecutors. NYOAG moved to quash the subpoenas, arguing in relevant part that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney and that the subpoenas were unenforceable as a result.

While NYOAG's motion was pending, on October 8, 2025, the Attorney General issued an order ratifying Mr. Sarcone's appointment as Special Attorney and designation as FAUSA pursuant to her general delegation authority under 28 U.S.C. §§ 509, 510 and 515. The order

further stated that, as FAUSA, Mr. Sarcone had authority to serve as Acting U.S. Attorney during the vacancy in the office of U.S. Attorney, subject to the conditions and time limits of the FVRA.

On January 8, 2026, the undersigned, sitting by designation, granted NYOAG's motion to quash. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 288 (N.D.N.Y. 2026) (the "Grand Jury Subpoenas Order"). The Grand Jury Subpoenas Order held that, contrary to the Government's contention, Mr. Sarcone was not lawfully serving as Acting U.S. Attorney pursuant to the automatic succession provision of the FVRA because he was not the FAUSA at the time the vacancy in the office of U.S. Attorney first arose. *Id.* at 294-97. The Grand Jury Subpoenas Order also rejected the Government's alternative argument that Mr. Sarcone was authorized to issue the subpoenas through his delegated authority as Special Attorney and FAUSA, concluding that the Attorney General could not use general delegation to vest Mr. Sarcone with the full authority of the U.S. Attorney outside the FVRA's exclusive vacancy-filling procedures. *Id.* at 297-98. The Grand Jury Subpoenas Order found problematic the purported authorization of Mr. Sarcone to "conduct any proceedings that U.S. Attorneys may conduct -- the full range of the office's powers." *Id.* at 298. The Grand Jury Subpoenas Order quashed the subpoenas and disqualified Mr. Sarcone from further involvement in the investigations underlying them. *Id.* at 298-300.

The Government appealed, and on August 21, 2026, the Second Circuit affirmed. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.* (*Grand Jury Subpoenas*), 188 F.4th 595, 598 (2d Cir. 2026), *petition for cert. filed*, No. 26-348 (U.S. Sep. 15, 2026). The Second Circuit agreed that Mr. Sarcone was not validly serving as Acting U.S. Attorney when he obtained the subpoenas because the FVRA permits only the FAUSA in place at the time the vacancy arises to become Acting U.S. Attorney automatically. *Id.* at 610. The Circuit also rejected the

Government's alternative argument that the Attorney General's delegation of authority independently authorized Mr. Sarcone to issue the subpoenas, holding that the Attorney General could not circumvent the FVRA by delegating to Mr. Sarcone all of the functions and duties of the vacant U.S. Attorney position, leaving him "indistinguishable from an *acting officer*."[1] *Id.* at 610-13. The Second Circuit affirmed both the decision to quash the subpoenas and the decision to disqualify Mr. Sarcone from further participation in the underlying investigations, finding that the Government had forfeited its challenge to the latter issue. *Id.* at 613-15.

**B. Defendant's Prosecution and PATH Application**

The following facts are from the indictment or Defendant's submissions on the instant motion, unless otherwise noted. On July 24, 2025, a federal grand jury returned an indictment charging Defendant with three counts of distributing fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The signature block at the end of the indictment identifies Mr. Sarcone as "Acting United States Attorney," but the indictment was signed by Assistant U.S. Attorney ("AUSA") Nicolas Commandeur on behalf of AUSA Matthew McCrobie. Mr. Sarcone did not sign the indictment.

On August 4, 2025, Defendant was released on pretrial conditions and supervision. On December 5, 2025, Defendant applied to PATH, the NDNY's pretrial diversion program. Defendant submitted with the instant motion a document titled "Introducing NDNY's New Pretrial Diversion Program" (the "PATH Document"), which he contends are the program's guidelines. The PATH Document states: "All requests for PATH, whether from the AUSA, defense counsel, or the probation office, will be reviewed by the U.S. Attorney with

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

recommendations from the AUSA, Team Leader, the USAO PATH Coordinator, the Criminal Chief, and the First Assistant U.S. Attorney." The PATH Document further states that, "[a]fter the U.S. Attorney approves a defendant for PATH," the assigned AUSA will draft a letter to the Probation Office recommending diversion.

On February 9, 2026, AUSA McCrobie informed defense counsel that the NDNY USAO had denied Defendant's PATH application. The present record does not identify who made this determination. According to the Government, Mr. Sarcone's purported tenure as Acting U.S. Attorney expired under the FVRA on February 10, 2026. Since then, Mr. Sarcone has retained his titles as Special Attorney and FAUSA.

In March 2026, defense counsel asked the NDNY USAO to reconsider Defendant's PATH application. The Government represents that, on or about March 30, 2026, defense counsel advised that Federal Public Defender Eric Schillinger intended to ask Mr. Sarcone to reconsider the PATH denial. On May 18, 2026, AUSA McCrobie informed defense counsel that the NDNY USAO had not changed its decision. The present record does not identify who made this determination. The Government represents that defense counsel responded that, because Mr. Schillinger had asked Mr. Sarcone to reconsider Defendant's PATH application, counsel would "wait for John's [Mr. Sarcone's] response." On May 20, 2026, defense counsel received "further information" from the NDNY USAO that Mr. Sarcone had denied Defendant's application. On June 5, 2026, Defendant filed the instant motion.

## II. DISCUSSION

### A. Dismissal of the Indictment

Defendant moves to dismiss his indictment on the basis that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney when the indictment was obtained. Defendant argues

that, although an AUSA signed the indictment, Mr. Sarcone unlawfully exercised the authority of the U.S. Attorney in approving Defendant's prosecution and authorizing the indictment. Defendant alternatively seeks discovery regarding Mr. Sarcone's involvement in the decision to charge Defendant. Neither form of relief is warranted. The indictment was proper because it was signed by a duly authorized AUSA, regardless of Mr. Sarcone's status.

The statutory scheme supports the conclusion that an AUSA's prosecutorial authority does not depend on the lawful service of the individual heading the relevant USAO. Congress authorized the Attorney General to appoint and remove AUSAs, *see* 28 U.S.C. § 542, and vested the Attorney General with authority over the conduct and supervision of litigation involving the United States, including the direction of AUSAs, *see id.* §§ 516, 519. "AUSAs are themselves representatives of the government. Because they are appointed directly by the Attorney General, their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party." *United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000) (holding that the court had jurisdiction even if the notice of appeal was signed by an improperly appointed U.S. Attorney); *see United States v. Baldwin*, 541 F. Supp. 2d 1184, 1214 (D.N.M. 2008) (finding indictment valid regardless of whether U.S. Attorney's appointment was constitutional); *cf. United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001) (declining to vacate conviction after trial conducted by AUSA acting under supervision of allegedly unconstitutionally appointed U.S. Attorney).

The Federal Rules of Criminal Procedure ("Rules") expressly recognize an authorized AUSA as an "attorney for the government" who may appear before a grand jury and sign an indictment. An indictment must be signed by "an attorney for the government," Fed. R. Crim.

P. 7(c)(1), and an authorized AUSA falls expressly within that definition, *see id.* 1(b)(1)(B). In *United States v. Gantt*, the Ninth Circuit explained that an infirmity in the appointment of the U.S. Attorney would not invalidate an indictment because Rule 7(c)(1) requires only the signature of an "attorney for the government." 194 F.3d 987, 998 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc); *accord United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) (holding that, "[e]ven assuming that [the U.S. Attorney]'s appointment is unconstitutional, Defendant's remedy would not be the dismissal of his indictment" because "the rules specifically provide that a criminal indictment signed by an [AUSA] is valid").

Recent decisions addressing challenges to purported Acting or Interim U.S. Attorneys have overwhelmingly applied these principles and declined to invalidate indictments signed by authorized AUSAs, even after finding that the purported U.S. Attorney was serving unlawfully. *See United States v. Garcia*, No. 25 Crim. 227, 2025 WL 2784640, at *15-16 (D. Nev. Sep. 30, 2025), *aff'd on other grounds*, *United States v. Jackson*, 187 F.4th 1198 (9th Cir. 2026), *petition for cert. filed*, No. 26-304 (U.S. Sep. 8, 2026); *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1106-09 (C.D. Cal.), *reconsideration denied*, 812 F. Supp. 3d 1011 (C.D. Cal. 2025); *United States v. Ramirez-Martinez*, No. 22 Crim. 1721, 2026 WL 113431, at *21-23 (D.N.M. Jan. 14, 2026); *United States v. Ndissi*, No. 25 Crim. 143, 2026 WL 318836, at *4-6 (D. Vt. Feb. 5, 2026); *see also United States v. Dillard*, No. 24 Crim. 47, 2026 WL 560356, at *4-7 (E.D. Va. Feb. 27, 2026) (addressing the issue although defendant did not move to dismiss indictment or otherwise challenge Interim U.S. Attorney's appointment or authority). *But see United States v. Naviwala*, 825 F. Supp. 3d 451, 527-29 (D.N.J.) (questioning whether to dismiss indictment signed by duly authorized AUSAs while unauthorized U.S. Attorney headed the office, though

question was mooted by subsequent appointment of new U.S. Attorney and filing of superseding indictment at No. 24 Crim. 378, Dkt. No. 128), *reconsideration denied*, No. 24 Crim. 99, 2026 WL 1031149 (D.N.J. Apr. 16, 2026), *appeal docketed*, No. 26-1896 (3d Cir. Apr. 17, 2026). Those courts have concluded that the absence of a lawfully serving U.S. Attorney does not strip otherwise-authorized AUSAs of their authority -- derived directly from the Attorney General -- to prosecute cases on behalf of the United States.

That conclusion resolves Defendant's challenge to his indictment. Mr. Sarcone did not sign the indictment. AUSA Commandeur signed it on behalf of AUSA McCrobie, and Defendant does not challenge the legality of that signature or the authority of either AUSA. Additionally, Defendant does not argue, and there is no indication, that any role Mr. Sarcone might have had in approving or obtaining the indictment prejudiced the grand jury process. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (holding that dismissal of indictment for nonconstitutional error "is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations"); *Ramirez*, 807 F. Supp. 3d at 1108 (declining to dismiss indictment where "nothing indicates that any presumed role [the unlawfully serving Acting U.S. Attorney] might have had in approving the indictments prejudiced the grand jury process"). Defendant's motion to dismiss the indictment on the basis of Mr. Sarcone's unlawful service as Acting U.S. Attorney is denied.

Defendant argues that any involvement by Mr. Sarcone in obtaining the indictment "is sufficient to justify dismissal." This argument is unavailing. This case differs from *Grand Jury Subpoenas*, in which Mr. Sarcone personally requested the subpoenas, invoked his purported authority as Acting U.S. Attorney in doing so and did not identify any other independently

authorized prosecutor as responsible for the subpoenas. *See* 188 F.4th at 601. The premise of the authorities discussed above is that an AUSA's prosecutorial authority exists independently of the U.S. Attorney. Even assuming that Mr. Sarcone participated in internal discussions concerning whether Defendant should be charged, such participation did not deprive the AUSAs who signed the indictment and have been prosecuting the case of their independent authority to do so.

Practical considerations reinforce this conclusion. A contrary rule would make the validity of an indictment signed by an authorized AUSA turn on who participated in internal charging decisions. Nothing in the statutory scheme suggests that Congress intended such a result. *Cf. Ruiz Rijo*, 87 F. Supp. 2d at 71-72 & n.2 (noting that "practical, as opposed to technical, considerations decide the validity of an indictment" and concluding that invalidating indictments based on an infirmity in the U.S. Attorney's appointment would "handcuff[] federal prosecutors in [the district], in effect rendering them impotent").

Defendant's motion for dismissal of the indictment is denied, and the request for discovery concerning Mr. Sarcone's involvement in the decision to charge Defendant is denied as moot.

**B. Disqualification of Mr. Sarcone**

Defendant moves to disqualify Mr. Sarcone from any further participation in this case. Decision is reserved on this request pending the supplemental production ordered below.

The Second Circuit held that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney under the FVRA and that the Attorney General could not circumvent the FVRA by delegating all of the duties of the U.S. Attorney to Mr. Sarcone. *Grand Jury Subpoenas*, 188 F.4th at 610-13. The Circuit reasoned that the FVRA's exclusivity requirement turns on function

rather than form, *see id.* at 610, and therefore prohibits a delegation "so comprehensive that its recipient functionally occupies the vacant office," *id.* at 613. The Circuit concluded that the Attorney General's delegation to Mr. Sarcone violated this rule because the delegation was "exhaustive of the [U.S. Attorney]'s functions and duties" and "left him indistinguishable from an *acting officer*." *Id.* at 611.

*Grand Jury Subpoenas* establishes that Mr. Sarcone may not purport to act as the U.S. Attorney or exercise authority so comprehensive that he functionally occupies that vacant office.[2] But neither that decision nor the FVRA precludes Mr. Sarcone from exercising any authority whatsoever -- including the ability to participate in prosecutions -- in a separately authorized capacity, including as Special Attorney or FAUSA. *Grand Jury Subpoenas* contemplated that, under different circumstances, Mr. Sarcone "might then have obtained or might still obtain the subpoenas in his capacity as Special Attorney and FAUSA." *See id.* at 614. At least two district courts have declined to disqualify an individual from participating in the challenged prosecution where the individual was found to have been unlawfully serving as Acting U.S. Attorney but also had been designated as FAUSA. *See Ramirez*, 807 F. Supp. 3d at 1112-14 ("Although [the individual] was never lawfully serving as Acting United States Attorney, he remains the FAUSA. The court has no basis to preclude [him] from performing the lawful duties of an FAUSA. And in *that* capacity, he could supervise these prosecutions (even though he cannot do so as Acting United States Attorney)."); *Ramirez-Martinez*, 2026 WL 113431, at *23-24 (same).

In July 2025, Mr. Sarcone was appointed Special Attorney indefinitely and designated FAUSA for one year. The Attorney General later issued an order "ratify[ing]" these actions.

[2] The Ninth Circuit's recent decision in *Jackson* is in accord with the Second Circuit's conclusion. *See* 187 F.4th at 1215-16 ("[T]he Attorney General's authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person.").

Defendant represents that Mr. Sarcone has retained these titles, and the Government emphasizes that Mr. Sarcone is still FAUSA. The present record, however, is unclear as to whether Mr. Sarcone is currently validly serving as either Special Attorney or FAUSA. As to the Special Attorney title, the Second Circuit has found impermissible the "sweeping delegation" of authority contained in Mr. Sarcone's July 2025 appointment letter, which authorized him to conduct in the NDNY "any kind of legal proceedings, . . . which United States Attorneys are authorized to conduct." *See Grand Jury Subpoenas*, 188 F.4th at 610-11. The Government does not argue, and the present record does not indicate, that this delegation was subsequently revised or that Mr. Sarcone was reappointed as Special Attorney under different terms.

As to the FAUSA title, as the Government acknowledges, the Executive Office for United States Attorneys designated Mr. Sarcone as FAUSA for a period of one year, effective July 15, 2025. A one-year designation would have ended on July 15, 2026. While the Government has represented after July 15, 2026, that Mr. Sarcone is still the FAUSA, the Government does not argue, and the present record does not indicate, that Mr. Sarcone's designation as FAUSA extended or was renewed beyond that date.

Accordingly, by **November 6, 2026**, the Government shall produce documents and, if additional statements are necessary, a declaration based on knowledge sufficient to identify the basis for (1) Mr. Sarcone's current authority to serve as Special Attorney and/or FAUSA of the NDNY or (2) any other authority supporting Mr. Sarcone's continued participation in Defendant's prosecution. The decision on Defendant's request to disqualify Mr. Sarcone is reserved pending that production.

**C. Invalidation of PATH Determination**

Defendant moves for the invalidation of his PATH denial and an independent review of his PATH application. He argues that (1) the U.S. Attorney has sole authority to review PATH applications and (2) because Mr. Sarcone was unlawfully serving as Acting U.S. Attorney at the time Defendant's PATH determination was made, he lacked the authority to make that determination. This request is denied. Defendant was advised that the "USAO NDNY" rejected his PATH application in February 2026 and denied reconsideration of the decision in May 2026. Defendant has not sufficiently established that the U.S. Attorney was the sole individual at the NDNY USAO who could make these decisions.

Defendant identifies no legal support for the proposition that PATH determinations must be made by a U.S. Attorney, and such determinations are not among the functions exclusively designated to U.S. Attorneys by statute. The Government has noted in another case that there are "relatively few" such functions, among them the authorization of an application seeking the disclosure of tax return information under 26 U.S.C. § 6103(i)(1). *See United States v. Giraud*, 795 F. Supp. 3d 560, 594 n.209 (D.N.J.), *aff'd*, 160 F.4th 390 (3d Cir. 2025); *see also In re Ord. to Authorize Disclosure of Tax Returns*, No. 25 Misc. 22, 2026 WL 63331, at *3 (N.D.N.Y. Jan. 8, 2026). 26 U.S.C. § 6103(i)(1)(B) specifies that only a few high-ranking Government officials, including U.S. Attorneys, may authorize such an application. There is no analogous statutory provision regarding pretrial diversion determinations. To the contrary, the DOJ Justice Manual states in the section on pretrial diversion that "[t]he U.S. Attorney, in his/her discretion *and with delegation to supervisory prosecutors as may be warranted*, may divert certain individuals against whom a prosecutable case exists." U.S. Dep't of Just., Just. Manual § 9-

22.100 (2023), https://www.justice.gov/jm/jm-9-22000-pretrial-diversion-program [https://perma.cc/2E9J-AGEH] (emphasis added).

The PATH Document relied on by Defendant does not alter the conclusion. The undated, unsigned document -- which the Government suggests is outdated by at least one year -- appears to describe the NDNY USAO's internal procedures for administering the district's pretrial diversion program. Even if the PATH Document were the operative policy for the NDNY during the relevant period, the document's reference to review and approval by the U.S. Attorney does not by itself establish that those functions are nondelegable as a matter of law.

Defendant's motion for the invalidation of his PATH denial and an independent review of his PATH application is denied, and the request for discovery concerning Mr. Sarcone's involvement in the PATH determination is denied as moot.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED** insofar as it seeks (1) dismissal of the indictment or discovery concerning Mr. Sarcone's involvement in the decision to charge Defendant and (2) invalidation of the PATH determination or discovery concerning Mr. Sarcone's involvement in the determination. Decision is reserved on Defendant's request for Mr. Sarcone's disqualification from future participation in the case.

By **November 6, 2026**, the Government shall serve on Defendant and file on the public docket documents and, if additional statements are necessary, a declaration based on knowledge sufficient to identify the basis for (i) Mr. Sarcone's current authority to serve as Special Attorney and/or FAUSA of the NDNY or (ii) any other authority supporting Mr. Sarcone's continued participation in Defendant's prosecution.

Dated: October 23, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE